## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## JASPER DIVISION

| | | |
|---|---|---|
| **DONNA S. HARRIS**, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | Civil Action Number |
| **vs.** | ) | **6:18-cv-01370-AKK** |
| | ) | |
| **ANDREW SAUL, Commissioner of** | ) | |
| **Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Donna S. Harris brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). After careful review, this court finds that the Administrative Law Judge ("ALJ") applied the correct legal standards and that his decision, which has become the decision of the Commissioner, is supported by substantial evidence. Therefore, the decision denying benefits is due to be affirmed.

### I.

Harris worked for more than twenty years as a bookkeeper before she stopped working at age fifty due to her alleged disability. R. 50, 192, 196-97. Thereafter, Harris filed an application for a period of disability and disability insurance benefits, alleging a disability onset date of October 29, 2015, due to impairments from

hypertension, depression, obsessive compulsive disorder, anxiety, post-traumatic stress disorder, panic attacks, bilateral pulmonary embolisms, fibromyalgia, high cholesterol, and an esophageal tear. R. 178-79. The SSA denied Harris's claim, and after a hearing before an ALJ, the ALJ issued a decision denying Harris's claim. R. 10-25, 84, 93-94. Subsequently, the Appeals Council denied Harris's request for review, rendering the ALJ's opinion the final decision of the Commissioner. R. 1, 8, 176-77. Harris now seeks review in this court. Doc. 1.

## II.

The issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997), and whether the ALJ applied the correct legal standards, *see Stone v. Comm'r of Soc. Sec.*, 544 Fed. Appx. 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). The court must affirm the Commissioner's findings even if the preponderance of the evidence weighs against them, so long as the decision reached is supported by substantial evidence. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

## III.

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 416(i)(1)(A). Further, the impairments must be so severe that the claimant "cannot, considering [ . . . ] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological

abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five-step analysis. 20 C.F.R. §§ 404.1520(a)–(f). Specifically, the Commissioner must determine, in sequence:

(1) whether the claimant is currently unemployed;

(2) whether the claimant has a severe impairment;

(3) whether the impairment meets or equals one listed by the SSA;

(4) whether the claimant is unable to perform his or her past work; and

(5) whether the claimant is unable to perform any work in the national economy.

*Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986) (citing 20 C.F.R. §§ 416.920(a)–(f)). "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the [Commissioner] to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

# IV.

Here, the ALJ performed the five-step analysis and determined that Harris satisfies Step One because she had not engaged in any substantial gainful activity since her alleged onset date. R. 15. Next, the ALJ found that Harris met the requirements of Step Two because she has the following severe impairments: major depressive disorder, generalized anxiety disorder, post-traumatic stress disorder, obsessive compulsive disorder, obesity, history of occlusion and stenosis of bilateral carotid arteries, and history of pulmonary embolism.[1] R. 15. The ALJ then proceeded to Step Three, finding that Harris did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." R.16 (internal citations omitted). At this Step, the ALJ specifically considered listings 12.04 (depressive, bipolar and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), and 12.15 (trauma- and stressor-related disorders), and found that Harris did not satisfy the "paragraph B" and "paragraph C" criteria for the listings because Harris has only "moderate limitation[s]" with remembering and applying

---

[1] Harris suggests that the ALJ erred by failing to acknowledge her conversion disorder. *See* doc. 7 at 2. However, Harris waived this issue by failing to present any argument or analysis to suggest her conversion disorder may qualify as a severe impairment. *See U.S. Steel v. Astrue*, 495 F.3d 1272, 1287 n.13 (11th Cir. 2007). Moreover, the ALJ accounted for Harris's conversion disorder in his determination of her RFC. R. 21.

information, interacting with others, concentrating or maintaining pace, and adapting

or managing oneself. R. 16-18.

The ALJ then concluded that Harris has the residual functional capacity

("RFC") to "perform light exertional work" with certain limitations:

> . . . [Harris] could only remember short simple instructions and would
> be unable to deal with detailed or complex instructions. She could do
> simple routine repetitive tasks but would be unable to do detailed or
> complex tasks. She would be limited to making simple work related
> decisions. [Harris] should have no interaction with the general public
> but could have occasional interaction with co-workers and frequent
> interaction with supervisors. She would be able to accept constructive
> non-confrontational criticism, able to work in small or large group
> settings and would be able to accept changes in the work place setting
> if introduced gradually and infrequently. A well-spaced work
> environment would be best for maximum concentration. She would be
> unable to perform assembly line work with production rate pace but
> could perform other goal-oriented work. In addition to normal workday
> breaks, she would be off-task 5% of an 8-hour workday (in non-
> consecutive minutes).

R. 18. Based on this RFC, and relying on the testimony of a vocational expert

("VE"), the ALJ determined at Step Four that Harris could not perform any of her

relevant past work. R. 23. The ALJ then proceeded to Step Five, where based on

Harris's age, education, work experience, RFC, and the VE's testimony, the ALJ

determined that "there are jobs that exist in significant numbers in the national

economy that [Harris] can perform," including sorter and cleaner/housekeeping. R.

24. Accordingly, the ALJ found that Harris "has not been under a disability, as

defined in the Social Security Act," from the alleged disability onset date through the date of his decision. R. 25.

## V.

Harris contends that substantial evidence does not support the ALJ's decision. Allegedly, the ALJ erred by focusing on one part of the record while ignoring or mischaracterizing others, and by failing to properly weigh the medical opinions. Doc. 7. For the reasons below, the court affirms the ALJ's decision.

## A.

Harris asserts that the ALJ ignored and mischaracterized parts of her medical records in reaching his findings regarding the severity of Harris's mental health impairments. Doc. 7 at 4, 24-28. An ALJ's decision is not based on substantial evidence if the ALJ selectively relies on only certain aspects of the record, *see McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986), or if her findings are tainted by severe mischaracterizations of the record, *see Webster v. Barnhart*, 343 F. Supp. 2d 1085, 1093-94 (N.D. Ala. 2004). Instead, the ALJ's "review must take into account and evaluate the record as a whole." *McCruter*, 791 F.2d at 1548 (citations omitted). Contrary to Harris's contention, this is precisely what the ALJ did in this case.

At issue here is the ALJ's finding that although Harris had severe mental impairments, those impairments did not cause marked or extreme limitations in

Harris's ability to function independently, appropriately, or effectively on a sustained basis. R. 16-17.   The ALJ concluded instead that Harris's mental impairments caused moderate limitations and did not satisfy the criteria for the listings for affective disorders, anxiety-related disorders, and personality disorders. *Id*. Harris asserts that the ALJ mischaracterized the records of Dr. Praveen Jetty, her treating psychiatrist, and Elaine Rasco, her therapist,[2] by finding that their treatment records show that Harris's mental health improved with treatment. Doc. 7 at 26-28.

Dr. Jetty began treating Harris in March 2015, when he diagnosed Harris with major depressive disorder with psychotic symptoms, panic disorder, and obsessive compulsive disorder. R. 802-04. After Harris's initial visit, Dr. Jetty prescribed medications to treat her mental disorders, and he also noted that Harris needed regular therapy sessions. R. 804. In a visit in September 2016, Harris reported that her therapy proved helpful, and that she did not "sit in the dark anymore." R. 1008. Harris reported a setback, however, a month later after a fire threatened her home. R. 1005-06. The setback proved temporary, and by February 2017, Harris informed Dr. Jetty that her obsessional thoughts were "much better," her depression had improved, and she was able to read a book and concentrate. R. 998. In May 2017, the most recent treating notes from Dr. Jetty in the record, Dr. Jetty documented that

---

[2] Ms. Rasco is a licensed clinical psychologist, and, therefore, is an acceptable medical source. 20 C.F.R. § 416.902(1)(2).

Harris was able to leave the house more frequently, exercised more by walking, and attended her granddaughter's play. R. 995. While these notes from 2017 reflect improvements, they also reflect that Harris reported that her anxiety increased at night, and that she has memory lapses, passive suicidal ideations, and a distractible mental state. R. 995-96, 998.

Ms. Rasco began treating Harris in April 2015. R. 822. Ms. Rasco's treating notes document Harris dealing with varying degrees of anxiety and depression, and battling issues stemming specifically from PTSD. R. 806-22, 884-993. The notes from Harris's visits in April 2017, which are the most recent notes from Ms. Rasco in the record, reflect that Harris reported feeling better about her herself, that she had had increased her activity, socialized more, and responded better to severe weather, one of the triggers of her PTSD symptoms, R. 884-886, 896-898.

Based on these records, the ALJ correctly noted that Harris's mental state improved with treatment.  Harris is correct that her treatment records from Ms. Rasco and Dr. Jetty paint a picture of incremental improvement tempered by a variety of setbacks.  But, while Harris's improvement should not be overstated, the record still provides substantial evidence to support the ALJ's finding that Harris's mental health impairments caused only moderate limitations. As the ALJ notes, Ms. Rasco consistently assigned Harris a Global Assessment of Functioning (GAF) Scale Score of 50-55. R. 21. That score, which never changed over the course of Harris's

treatment, R. 388, 806-822, 910-991, falls primarily within the range of moderate symptoms, i.e., 51-60, according to the DSM-IV. R. 21.[3] And, Ms. Rasco also consistently described Harris's depression and anxiety as moderate or mild, and she assessed Harris as having a "fair" overall prognosis. *Id.*

The opinion of Dr. Samuel Williams, a non-examining State Agency Psychological Consultant tasked with evaluating Harris's mental RFC, also provides support for the ALJ's finding. Dr. Williams opined that Harris's mental impairments caused at most "mild" or "moderate" limitations, and, therefore, that Harris did not satisfy either the B or C criterion of the Listings for affective disorders, anxiety-related disorder, and personality disorders. R. 73, 77-79. Dr. Williams further opined that although Harris's conditions could reasonably be expected to produce some of the symptoms she described, the "severity alleged is not consistent with the evidence in [the] file." R. 73.

Finally, Harris's own statements support a conclusion that her mental impairments caused only moderate limitation. To begin, after Harris reported that she quit her job in October 2015 due to being overwhelmed with the stresses of daily work, R. 808, in March 2016, Harris denied depression and expressed a willingness to volunteer for a political campaign, R. 968. Obviously, there are multiple ways to

---

[3] The GAF Scale is designed to provide an assessment of a person's psychological, social, and occupational functioning, with lower numbers indicating more severe symptomology. R. 21.

assist a campaign. But, by its very nature, the role involves many of the same stressors that are associated with regular employment, and Harris's willingness to volunteer suggests she was no longer overwhelmed by the stressors she described. Second, in the summer of 2016, Harris reported that she and her husband planned a cross-country trip to attend an event with tens of thousands of strangers. *See* R. 954, 958. The court recognizes that Harris informed the ALJ that plans for the trip ultimately fell through due in part to her anxiety. R. 47. Still, the inconsistencies inherent in the story undermine her personal statements about the severity of her symptoms. In light of those inconsistencies, and the various treating records that describe her condition as mild or moderate, the ALJ did not err by finding that Harris's statements concerning the intensity, persistence, and limiting effects of her symptoms were "not entirely consistent with the medical evidence and other evidence in the record." R. 19.

The ALJ must have more than a scintilla, but less than a preponderance of evidence to support his finding of moderate limitations. *See Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). Here, the ALJ relied on evidence that includes Ms. Rasco's treatment notes, which are, according to Harris, "by far the most complete and precise medical evidence in the record," doc. 7 at 28. This evidence and the other evidence cited by the ALJ builds the "logical bridge from the evidence

to his [. . .] conclusion," and fulfills the substantial evidence requirement. *Flentroy-Tennant v. Astrue*, 2008 WL 876961 at \*8 (M.D. Fla. Mar. 27, 2008).

## B.

Harris also contends that the ALJ erred by improperly weighing the medical opinions of her treating and examining physicians. Doc. 7 at 24, 29-31. An ALJ must consider each medical opinion in the record, and "must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (citation omitted). Further, the opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2003) (internal citations omitted). "Good cause" exists when the treating physician's opinion was not bolstered by the evidence, or the evidence supported a contrary finding. *Id*. And, a physician's lack of specialist qualifications can provide good cause, for an ALJ's decision to accord more weight to the opinion of a specialist.[4]   *King v. Barnhart*, 320 F. Supp. 2d 1227, 1231-32 (N.D. Ala. 2004).

---

[4] *See Gholston v. Barnhart*, 347 F. Supp.2d 1108, 1114-15 (M.D. Ala. 2003) (holding that the ALJ provided "good cause" for rejecting the opinion of the claimant's general physician regarding the claimant's psychological state and, instead, relying on the opinion of a consulting psychologist, as he took the "opinion of a specialist over that of a non-specialist").

1.

Harris contends that the ALJ failed to properly address the opinion of Dr. Jerry Gragg, a psychologist who examined Harris at the request of the Disability Determination Service in December 2015. Doc.7 at 30. Based on his examination, Dr. Gragg concluded that Harris displayed symptoms consistent with recurrent moderate Major Depressive Disorder, Post-Traumatic Stress Disorder, Generalized Anxiety Disorder, and Obsessive-Compulsive Disorder, and that "none of [Harris's mental] conditions are adequately treated." R. 826. Dr. Gragg opined that: (1) "[w]hile [Harris] has adequate intellectual functioning to be able to understand, remember, and carry out instructions, her ability to do so at present is significantly restricted," R.826-27; (2) Harris "has adequate skills to relate appropriately to supervisors and co-workers, but is significantly socially withdrawn at present . . . ," R. 827; and (3) Harris's mental impairments, including that "her ability to deal with work-related stresses is severely negatively impacted at present," significantly hindered her employability, *id.* Although the ALJ gave substantial weight to Dr. Gragg's opinions, the ALJ noted that Dr. Gragg did not have Harris's more recent mental health treatment records. R. 23. And because these recent records show that Harris's mental health improved with treatment, the ALJ relied on them in finding Harris had the mental RFC to do moderate work. *See* R. 23. The medical records

support the ALJ's finding, *see* Section V(A.), *supra*, and therefore no basis exists to reverse the ALJ.

2.

Harris contends also that the ALJ erred by discounting the opinion of Dr. John Bivona, her primary care physician. Doc. 7 at 31; 9 at 2. Dr. Bivona, who has treated Harris since 2009, gave a sworn statement regarding Harris's condition in May 2017, R. 20, 1023-39, and agreed with Dr. Gragg's opinion that Harris's mental health conditions presented a significant hindrance to her employability, R. 1034. Further, Dr. Bivona opined that Harris's ability to deal effectively with work-related stressors had not changed since Dr. Gragg's examination, and that Harris's prognosis was poor, R. 1035.

The ALJ considered these opinions, but gave them only some weight. R. 20. In particular, the ALJ found that Dr. Bivona's opinions about Harris's mental health conditions were not supported by Dr. Bivona's treatment notes, "which routinely described [Harris] as alert and oriented with good eye contact and conversant." R. 20; *See also* R. 852, 859, 864, 870, 875. The court notes that Dr. Bivona's records show that he recommended that Harris follow-up with mental health care providers for her depression. R. 855, 860, 864. Although the records show that Dr. Bivona discussed Harris's depression with her, the ALJ had good cause to give Dr. Bivona's opinion regarding Harris's mental health only some weight. As an initial matter, Dr.

14

Bivona is not a mental health care specialist,[5] and his opinions are not entitled to the same weight as a specialist. *See King*, 320 F. Supp. 2d at 1231-32; *Gholston*, 347 F. Supp. 2d at 1114-15. Moreover, Dr. Bivona's opinions that Harris's condition remained unchanged and that she had a poor prognosis are not consistent with Ms. Rasco's and Dr. Jetty's treating records discussed above.  As specialists, their opinions have more weight than Dr. Bivona's. *See Mills v. Astrue*, 226 F. App'x 926, 930 (11th Cir. 2007) (citation omitted); *King*, 320 F. Supp. 2d at 1231-32.

3.

Finally, Harris contends that the ALJ did not properly weigh the opinion of Dr. Williams, doc. 7 at 29-30, the independent state agency psychological consultant who assessed Harris's mental RFC based on a review of Harris's records, *see* R. 72-73, 77-79. The ALJ gave Dr. Williams's opinion "appreciable weight" except for Dr. Williams's conclusion that Harris would miss one to two days of work each month due to psychological symptoms, which the ALJ considered speculative and entitled to only little weight. R. 23. According to Harris, Dr. Williams's opinion is supported by treating notes that show Harris attends therapy once a week. Doc. 7 at 29. But, given the variations in Harris's therapy attendance, R. 884-973, and that

---

[5] Though Dr. Bivona may have extensive knowledge of Harris's treatment history, and he testified that it is ordinary for a primary care physician to treat depression and anxiety, R. 1027, there is nothing in the record to suggest that Dr. Bivona should be entitled to the deference of a mental health practitioner or specialist.

Ms. Rasco recommended therapy of only one hour once per week, *see id.*, Dr. Williams's opinion that Harris would miss up to two days per month was indeed speculative. Moreover, the opinion of a non-examining physician is not entitled to any deference. *See Swindle v. Sullivan*, 914 F.2d 222, 226 n.3 (11th Cir. 1990) (citation omitted).

In summary, the ALJ followed the correct legal standards and substantial evidence supports the weight that the ALJ gave to the opinions of medical professionals in this case. Thus, while it is clear from the record that Harris has suffered from significant mental health issues for years, because the ALJ's decision "is supported by substantial evidence, this [c]ourt must affirm . . . ." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).

## VI. CONCLUSION

Based on the foregoing, the court concludes that the ALJ's determination that Harris is not disabled, and that the ALJ applied proper legal standards in reaching this determination. Therefore, the Commissioner's final decision is **AFFIRMED**. The court will enter a separate order in accordance with this memorandum opinion.

**DONE** the 22nd day of April, 2020.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE